**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Konnie Drake,<br><br>        Plaintiff,<br><br>v.<br><br>Living Spaces Furniture LLC,<br><br>        Defendant. | No. CV-22-01384-PHX-DWL<br><br>**ORDER** |

On August 25, 2025, the parties filed the proposed joint final pretrial order. (Doc. 93.) In it, Defendant identified six potential trial witnesses (Rhonda Bell, Marina Alcocer, Bobby Wilson, Anthony Dekker, Jeff Brodin, and Scott Jacobs) to whom Plaintiff objected on the ground that they "were not disclosed in pretrial proceedings." (*Id.* at 8-10.) During the final pretrial conference on August 26, 2025, the Court directed the parties to further brief the issue. (Doc. 98.) The parties have now done so—Defendant has filed a motion to allow five of the disputed witnesses to testify at trial (while acknowledging that the sixth, Jacobs, will not testify during Defendant's case-in-chief) and Plaintiff has filed an opposition. (Docs. 101, 105.) For the reasons that follow, Defendant's motion is granted in part and denied in part.

**DISCUSSION**

I.    <u>Legal Standard</u>

Rule 26(a)(1)(A)(i) of the Federal Rules of Civil Procedure provides that "a party must, without awaiting a discovery request, provide to the other parties . . . the name and,

if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." *Id.*

Rule 37(c)(1) of the Federal Rules of Civil Procedure specifies the consequences for violating Rule 26(a)'s duty of disclosure. It provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." *Id.* This rule "'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011).

"The party requesting sanctions [under Rule 37] bears the initial burden of establishing that the opposing party failed to comply with the [applicable] disclosure requirements." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 241 (D. Nev. 2017). If the movant makes this showing, "[t]he party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R&R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012). "[C]ourts have identified several factors to guide the determination of whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (cleaned up).

"Rule 37(c)(1) is an 'automatic' sanction that prohibits the use of improperly disclosed evidence," such that "litigants can escape the 'harshness' of exclusion only if they prove that the discovery violations were substantially justified or harmless." *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (citation omitted). Nevertheless, "[t]he automatic nature of the rule's application does not mean that a district

court *must* exclude evidence that runs afoul of Rule 26(a) or (e) . . . . Rather, the rule is automatic in the sense that a district court *may* properly impose an exclusion sanction where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless." *Id.* (citation omitted). The "party facing sanctions under [Rule 37(c)(1)] bears the burden of showing that a sanction other than exclusion is better suited to the circumstances." *Id.* at 741. "[A] noncompliant party must 'avail himself of the opportunity to seek a lesser sanction' by formally requesting one from the district court." *Id.* (citation omitted).

II.   Analysis

    A.   **Rhonda Bell**

Bell is Defendant's senior director of human resources. (Doc. 101 at 3.) Defendant argues that it properly disclosed Bell as a witness in its disclosure statement, albeit without specifically referencing her by name, by disclosing its intention to call a "company representative" as a witness. (*Id.*) Defendant further argues that Plaintiff was aware of Bell's status as the designated corporate representative and had a "clear opportunity" to depose Bell, only to cancel the Rule 30(b)(6) deposition at the last moment. (*Id.*)

In response, Plaintiff does not acknowledge, let alone specifically dispute, any of these points and does not provide any analysis that is specific to Bell—instead, Plaintiff simply argues that none of the disputed witnesses should be allowed to testify because none was disclosed by name in Defendant's disclosure statement. (Doc. 105.)

Defendant has the better of this argument. As this Court has observed in past cases, although "the Ninth Circuit does not appear to have spoken definitively on the issue and . . . some courts have reached contrary conclusions," "many courts and commentators have concluded that when, as here, a party seeks to disclose a corporate representative who will testify about corporate policies, it is not necessary to identify that individual by name." *Equity Recovery Specialists LLC v. Select Portfolio Servicing Inc.*, 2023 WL 5278675, *6-7 (D. Ariz. 2023). *See also Spence v. American Airlines, Inc.*, 775 F. Supp. 3d 963, 973 & n.8 (N.D. Tex. 2025) ("It is well-established that, where the subjects of information are

1  disclosed, and the information is corporate in nature and could be elicited from any number
2  of corporate representatives, then a generic designation of corporate representatives is
3  sufficient disclosure for purposes of Rule 26.") (cleaned up).  Here, in the portion of its
4  disclosure statement identifying "each individual likely to have discoverable information
5  . . . that Defendant may use to support its defenses," Defendant identified "Representative
6  of Living Spaces" and further disclosed that this representative "may provide testimony
7  regarding Living Spaces' operations and employment policies and practices."  (Doc. 60-
8  13 at 2-4.)  Thus, Defendant complied with its duty of disclosure under Rule 26(a)(1)(A)(i)
9  with respect to Bell.

10  Alternatively, even if there was a disclosure violation as to Bell, it was both
11  substantially justified (due to the unsettled nature of the law as to whether a corporate
12  representative must specifically be identified by name) and harmless.  Defendant was
13  aware of Bell's status as Defendant's corporate representative and had a chance to depose
14  her, only to unilaterally cancel the Rule 30(b)(6) deposition that he had noticed.  *Cf.*
15  *Rodriguez v. Estero Fire Rescue*, 2014 WL 3908165, *3 (M.D. Fla. 2014) (concluding that
16  disclosure violation was harmless where "Plaintiff originally had scheduled the depositions
17  of three of the witnesses to take place on June 5, 2014, the day before the close of discovery,
18  but cancelled two depositions the day before").  Bell also provided a detailed declaration
19  in support of Defendant's summary judgment motion (Doc. 56-4), so Plaintiff will not be
20  ambushed at trial when Bell testifies.

21  B.  **Marina Alcocer And Bobby Wilson**

22  Alcocer is Defendant's "visual communications manager." (Doc. 101 at 5.)  Wilson
23  is Defendant's manager of inventory control.  (*Id.* at 10.)  Defendant acknowledges that it
24  did not disclose Alcocer or Wilson in its disclosure statement but contends the disclosure
25  violation was harmless because Defendant's initial disclosure statement designated "any
26  witnesses disclosed by Plaintiff," "Alcocer's name appears in Plaintiff's deposition
27  multiple times," and "Plaintiff also discussed Wilson during his deposition." (*Id.* at 5, 10.)
28  Alternatively, Defendant emphasizes that Plaintiff included, as attachments to his summary

- 4 -

judgment response brief, declarations from two witnesses (Thorne and Stump) that included new, previously undisclosed statements by those witnesses that were "inconsistent with prior contemporaneous statements these individuals made to Ms. Alcocer," as well as "inconsistent with prior contemporaneous statements these individuals made to Mr. Wilson," and are "materially more serious than the allegations they previously raised about the conduct of [Defendant's] personnel. It would be wholly unfair as well as clearly prejudicial to deny [Defendant] the opportunity to introduce testimony to refute these and Plaintiff's other belatedly-raised allegations." (*Id.* at 5-6, 10-11.)

In response, Plaintiff argues that Defendant's first argument lacks merit because the mere fact that a person's name was mentioned during a deposition does not negate a party's disclosure obligations under Rule 26. (Doc. 105 at 4-5.) As for Defendant's second argument, Plaintiff contends that he timely disclosed Thorne and Stump in his initial disclosure statement filed in February 2023. (*Id.* at 5.)

The Court agrees with Plaintiff that Defendant's first harmlessness argument is unavailing. Plaintiff did not, as far as the Court is aware,[1] disclose Alcocer or Wilson in his disclosure statement, so Defendant's reference to "[a]ny witnesses disclosed by Plaintiff" in its disclosure statement (Doc. 60-13 at 4) was insufficient to incorporate Alcocer and Wilson by reference. Meanwhile, the law is clear that the mere mention of a person's name during a deposition does not eliminate each side's obligation to comply with its disclosure obligations under Rule 26. *Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 862 (9th Cir. 2014) ("Sweetwater contends that because other disclosed witnesses had mentioned the contested witnesses at their depositions, Plaintiffs were on notice that the contested witnesses might testify and were not prejudiced by untimely disclosure. Sweetwater contends, in essence, that it complied with Rule 26 because Plaintiffs knew of the contested witnesses' existence. The district court did not abuse its discretion by rejecting Sweetwater's argument. . . . That another witness has made a

---

[1] Although Plaintiff asserted in his response brief that his "Initial Disclosure Statement of February 17, 2023" was "attached [as] Exhibit A" (Doc. 105 at 5), nothing was filed as an attachment to Plaintiff's response brief.

- 5 -

passing reference in a deposition to a person with knowledge or responsibilities who could conceivably be a witness does not satisfy a party's disclosure obligations. An adverse party should not have to guess which undisclosed witnesses may be called to testify.").

Turning to Defendant's second argument, although it appears that Plaintiff properly and timely disclosed Thorne and Stump in his Rule 26 disclosures, it also appears that neither side chose to depose Thorne or Stump during the discovery period. As a result, at summary judgment, Plaintiff obtained declarations from Thorne and Stump and provided them as attachments to his response brief. Thorne's declaration does not contain any mention of Alcocer or Wilson—instead, Thorne recounts alleged statements made by certain other of Defendant's employees (Green, Dekker, Moyer, Owens, Nagy, Mendenhall). (Doc. 60-6 ¶¶ 4, 8, 10, 18-20.) Likewise, Stump's declaration does not contain any mention of Alcocer or Wilson—instead, Stump recounts alleged statements made by certain other of Defendant's employees (Dekker, Overstreet, Mendenhall, Owens). (Doc. 60-8 ¶¶ 10, 11, 14-24.) In its reply brief, Defendant made a conclusory attempt to strike these (and other) declarations on various grounds, but none of those grounds were premised on a lack of disclosure. (Doc. 64 at 3 n.2.) In the summary judgment order, the Court denied the motion to strike: "Defendant's request to strike the Thorne declaration lacks merit. Although Defendant makes a vague allusion to the 'sham affidavit' doctrine, Defendant makes no effort to establish that Thorne's declaration contradicts his prior deposition testimony (or even that Thorne was deposed). Defendant's hearsay objection fares no better, as Thorne attributes the challenged statements to agents of the party-opponent, and the statements are not, in any event, being offered for the truth of the matter asserted." (Doc. 71 at 23 n.14.)

Given this backdrop, it would be improper to allow Defendant to call Alcocer or Wilson as a witness during its case-in-chief with no limitations on the scope of their testimony. Defendant was provided timely notice of Thorne's and Stump's status as individuals likely to have discoverable information that Plaintiff may use to support his claims, yet Defendant chose not to depose either of them during the discovery period.

- 6 -

Thus, to the extent Defendant complains that the specific allegations in Thorne's and Stump's declarations "were first presented after discovery was closed" (Doc. 101 at 5), that is a consequence of Defendant's own strategic choice not to depose them.[2]

With that said, one reason why Defendant wishes to call Alcocer and Wilson as witnesses is to show that the assertions set forth in Thorne's and Stump's declarations "are inconsistent with prior contemporaneous statements these individuals made to Ms. Alcocer" and "to Mr. Wilson." (Doc. 101 at 5, 10.) In other words, Defendant wishes to call Alcocer and Wilson as impeachment witnesses. If Alcocer and Wilson only testify for this limited purpose, they are exempt from Rule 26(a)(1)(A)(i)'s disclosure requirement: "[A] party must, without awaiting a discovery request, provide to the other parties . . . the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, *unless the use would be solely for impeachment*." *Id.* (emphasis added). Thus, Defendant may call Alcocer and Wilson as witnesses at trial, but only for the limited purpose of impeaching Thorne and Stump (*i.e.*, testifying that Thorne and/or Stump made previous statements to them that are inconsistent with Thorne's and/or Stump's declaration and trial testimony). *Gribben v. United Parcel Serv., Inc.*, 528 F.3d 1166, 1171-72 (9th Cir. 2008) ("Gribben contends the district court erred in excluding the testimony of Charles Rahill which he offered 'strictly for impeachment purposes' and as to which he would have agreed to a limiting instruction. The evidence was excluded on the ground that Gribben had failed to disclose it in pretrial discovery. We agree that the district court erred because impeachment evidence does not have to be revealed in pretrial disclosures."). Any trial testimony by Alcocer and Wilson may not go beyond this limited topic. *See, e.g.*, *Kempf v. Barrett Business Services, Inc.*,

---

[2] The Court notes that it is at least theoretically possible that the statements in Thorne's and Stump's declarations went beyond the scope of how their anticipated testimony was described in Plaintiff's disclosure statement. However, Defendant does not specifically make this argument in its motion. Additionally, as noted in the previous footnote, neither side has actually provided Plaintiff's disclosure statement. Defendant has thus failed to establish that it was unfairly surprised by the substance of Thorne's and Stump's declarations. *R&R Sails*, 673 F.3d at 1246 (it is the non-disclosing party's burden to demonstrate harmlessness or substantial justification).

336 F. App'x 658, 661 (9th Cir. 2009) ("Barrett's counsel stated that Garretson's testimony was offered 'in part' to impeach Kempf.  Because Garretson's testimony was not offered 'solely' for impeachment purposes, it does not fall within the exception to Rule 26(a)(1)."); *Mort v. DeJoy*, 2022 WL 14129778, *2 (E.D. Cal. 2022) ("Mort may call Mr. Silva as an impeachment witness, but he may not testify regarding the merits of Mort's claims or include testimony responsive to USPIS's requested discovery.  USPIS may raise objections during trial if Mr. Silva's testimony exceeds the imposed limitations.").

### C. **Anthony Dekker**

Dekker was one of Plaintiff's former supervisors.  During his deposition in this case, Plaintiff repeatedly accused Dekker of making racially insensitive comments that contributed to the alleged hostile work environment and of retaliating against Plaintiff. (Doc. 56-3 at 161-62 ["I told [Dekker] that I was at the time a member of the NAACP, and he—he stated, the NAACP?  He said, what is that?  A black thing?  And, then, I was, like, a black thing?  So when I asked him that, looked in disgust, and he . . . just backed off [because] . . . he knew that he . . . said something that was inappropriate.  I . . . went to let Nicole, my GM, know what had happened and let them know about her sales manager . . . .  Dekker was still, I guess, upset that he told me that the NAACP was a black thing and he . . . started to target my department. . . .  I said, Mr. Dekker, I need you to . . . work with me . . . [but] Mr. Dekker didn't . . . like that I was trying to help and correct him and, you know, then he just kept harassing my team, retaliating against me."]; *id.* at 163 ["Dekker . . . called an African-American lady, told her that she looked like a hooker, 'cause she had on makeup."]; *id.* at 166-67 ["I believe [Dekker] supported the white team members and not myself."].)  Additionally, in the declarations submitted as attachments to Plaintiff's response to Defendant's summary judgment motion, Thorne and Stump accused Dekker of using racial epithets in the workplace, including when referring to Plaintiff. (Doc. 60-6 ¶ 8 [Thorne: "I heard A.J. Decker refer to Konnie Drake as the 'fast nigger' on multiple occasions while working at the store."]; Doc. 60-8 ¶ 10 [Stump: "While working at the store I would sometimes overhear A.J. Dekker making offensive jokes denigrating

African Americans."].) Notwithstanding this, Defendant never identified Dekker as a witness in its Rule 26 disclosures (Doc. 60-13 at 2-5) or amended its Rule 26 disclosures following receipt of the Thorne and Stump declarations to add Dekker.

Although these oversights are regrettable, this is a textbook example of a disclosure violation that was harmless. It has been crystal-clear to both sides, throughout this case, that Dekker would be a key witness. *Cf. Liberty Ins. Co.*, 41 F.4th at 1192 (reversing district court's imposition of exclusionary sanction under Rule 37(c)(1) where sanctioned party failed to formally disclose a key witness whose conduct provided the foundation for the claims in the lawsuit: "It seems very unlikely that Liberty was prejudiced or surprised by Jerry Brodeur's testimony about the family's ATV. Liberty filed the federal action for the sole purpose of determining whether the Brodeurs were entitled to coverage under the Liberty policy . . . . As the owner of the cabin and ATV, as well as the only witness called to testify at trial, it is entirely *unsurprising* that Jerry Brodeur would testify on these subjects."). Thus, the relevant factors support a finding of harmlessness—Plaintiff cannot credibly claim to be surprised that Dekker might testify, Plaintiff declined to depose Dekker during the discovery process despite knowing that his accusations against Dekker formed a central part of his claims (and, thus, there is no prejudice in allowing Dekker to testify and no need to disrupt the trial schedule by reopening discovery), and Defendant did not act in bad faith by failing to formally disclose Dekker. *Id.* (identifying the relevant factors). Indeed, it would be bizarre, in a trial where the outcome may turn on whether Dekker made the offensive statements that Plaintiff, Thorne, and Stump attribute to him, to bar Dekker from even taking the stand to deny making those statements.

D.   **Jeff Brodin**

The last witness at issue is Brodin, whom Defendant hired as outside counsel to perform an investigation into Plaintiff's complaints. (*See generally* Doc. 56 at 9-10 [Defendant's summary judgment motion, describing Brodin's role].) Defendant did not identify Brodin as a potential witness in its Rule 26 disclosures. (Doc. 60-13 at 2-5.)

One of Defendant's arguments as to why Brodin should be allowed to testify,

1  despite this lack of disclosure, is that his name came up during Plaintiff's deposition. (Doc.
2  101 at 7.) But as noted in earlier portions of this order, this argument is foreclosed by
3  *Ollier*.
4        Defendant also contends that Brodin should be allowed to testify because one of
5  Plaintiff's proposed trial exhibits is a letter from one of Defendant's employees, Owens-
6  Cobb, to Brodin, yet neither side has identified Owens-Cobb as a witness. (*Id.* at 6-7.)
7  This argument is unavailing. Putting aside that it is unclear whether the letter will even be
8  admitted into evidence at trial—Defendant has raised various objections to the letter in the
9  final pretrial order (Doc. 97 at 11)—Plaintiff's decision to mark this letter as a trial exhibit
10 sheds no light on whether it was harmless or substantially justified for Defendant to fail to
11 disclose its intent to call Brodin as a witness. In a related vein, although it was (or should
12 have been) obvious to everyone that Dekker would be a key witness at trial, given that his
13 alleged conduct is central to Plaintiff's claims, the same cannot be said with respect to
14 Brodin. It is not inevitable that an outside counsel who was retained to perform an
15 investigation into complaints of discrimination would be called as a witness at trial. Thus,
16 Defendant's failure to disclose Brodin in its Rule 26 disclosures may have induced Plaintiff
17 not to depose Brodin. This was harmful to Plaintiff, and any attempt to correct the harm
18 (such as, for example, postponing trial to reopen discovery) would be overly disruptive.
19 *Liberty Ins. Co.*, 41 F.4th at 1192.
20       Defendant's final argument is that Brodin should be allowed to testify because some
21 of the statements in the Thorne and Stump declarations "are inconsistent with prior
22 contemporaneous statements these individuals made to Mr. Brodin." (Doc. 101 at 7.) The
23 analysis as to this theory mirrors the analysis as to Alcocer and Wilson—to the extent
24 Brodin's testimony is limited solely to impeachment, it is permissible. Thus, Defendant
25 may call Brodin as a witness at trial, but only for the limited purpose of impeaching Thorne
26 and Stump (*i.e.*, testifying that Thorne and/or Stump made previous statements to him that
27 are inconsistent with Thorne's and/or Stump's declaration and trial testimony). *Gribben,*
28 528 F.3d at 1171-72; *Mort*, 2022 WL 14129778 at *2.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to allow witness testimony (Doc. 101) is **granted in part and denied in part**, as set forth above.

Dated this 31st day of August, 2025.

Dominic W. Lanza
United States District Judge